UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

LAURA D.,

                                        Plaintiff,

v.                                                      5:21-CV-445
                                                       (LEK/TWD)

COMMISSIONER OF SOCIAL SECURITY,

                                        Defendant.
_____

APPEARANCES:                            OF COUNSEL:

LAURA D., PLAINTIFF, PRO SE

U.S. SOCIAL SECURITY ADMIN.              NATASHA OELTJEN, ESQ.
  *Counsel for Defendant*
J.F.K. Federal Building, Room 625
15 New Sudbury Street
Boston, Massachusetts 02203

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

### ORDER AND REPORT-RECOMMENDATION

        Plaintiff Laura D. ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) seeking

judicial review of a final decision of the Commissioner of Social Security ("Defendant" or

"Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and

Supplemental Security Income ("SSI").  (Dkt. No. 1.)  Plaintiff is appearing pro se, and the Clerk

provided her a copy of the Local Rules of Practice and the Pro Se Handbook for the Northern

District of New York.  (Dkt. Nos. 6, 10.)  Plaintiff did not consent to the disposition of this case

by a Magistrate Judge. (Dkt. No. 4.)  Both parties filed briefs, which the Court treats as motions

under Federal Rule of Civil Procedure Rule 12(c) in accordance with General Order 18.  (Dkt.

Nos. 14, 17.)  Oral argument was not heard.  For the reasons set forth below, the undersigned recommends the District Court deny Plaintiff's motion and affirm the Commissioner's decision denying Plaintiff's applications.

## I.      BACKGROUND AND PROCEDURAL HISTORY

Plaintiff was born on March 2, 1979.  (Administrative Transcript at 42, 249.[1])  She is a high school graduate, who attended college but did not obtain a degree.  (T. 46, 1029.)  Her prior employment included work as a claims examiner for an insurance company and as a payroll clerk for several different organizations.  (T. 47, 311, 1029.)  She has not worked since being injured in a car accident in 2012.  (T. 50, 1029.)

Since the accident, Plaintiff reports continuous neck and back pain radiating into her hips and shoulders.  (T. 637.)  The pain is exacerbated by exertion, cold temperatures, and general changes in the weather.  (*Id*.)  Her diagnosed physical impairments include a herniated disc, degenerative disc disease, carpal tunnel syndrome, and a fluid-filled cyst, or syrinx, on her spinal cord.  (T. 49, 280, 711, 721).  Plaintiff also has a history of mental health treatment, including a three-month hospitalization for bipolar disorder and related symptoms.  (T. 735.)  Although recent treatment notes reflect improvement with psychiatric medication, Plaintiff testified she still experiences significant anxiety and difficulty concentrating.  (T. 47-48, 738, 860, 984.)

On November 19, 2018, Plaintiff protectively filed applications for DIB and SSI, both alleging an onset date of December 1, 2016.  (T. 249-265.)  Plaintiff's applications were initially

---

[1]  The Administrative Transcript is found at Dkt. No. 13.  Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the numbers assigned by the Court's CM/ECF electronic filing system. Citations not made to the Administrative Transcript will use the page numbers assigned by the Court's CM/ECF electronic filing system.

denied on November 7, 2019, and her request for administrative reconsideration was denied on

March 11, 2020.  (T. 67-151.)  Thereafter, Plaintiff filed a written request for a hearing, and a

telephonic hearing was held on August 14, 2020, before Administrative Law Judge ("ALJ")

Jeremy G. Eldred.  (T. 40-61.)  Plaintiff and vocational expert ("VE") Susan Gaudet testified at

the hearing.  (T. 45-60.)  On September 23, 2020, the ALJ issued a written decision finding

Plaintiff was not disabled under the Social Security Act.  (T. 8-30.)  On March 12, 2021, the

Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final

decision of the Commissioner.  (T. 1-7.)  Plaintiff commenced this action on April 20, 2021.

(Dkt. No. 1.)

## II.    RELEVANT LEGAL STANDARD

### A.    Standard for Benefits[2]

To be considered disabled, a plaintiff seeking disability benefits must establish he or she

is "unable to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which has lasted or

can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§

423(d)(1)(A), 1382c(a)(3)(A).  In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such
> severity that [she] is not only unable to do [her] previous work but
> cannot, considering [her] age, education, and work experience,
> engage in any other kind of substantial gainful work which exists
> in the national economy, regardless of whether such work exists in
> the immediate area in which [she] lives, or whether a specific job

---

[2]  While the Supplemental Security Income program has special economic eligibility
requirements, the requirements for establishing disability under Title XVI, 42 U.S.C. §
1382c(a)(3) and Title II, 42 U.S.C. § 423(d), are identical, so "decisions under these sections are
cited interchangeably."  *Donato v. Sec'y of Health and Human Servs.*, 721 F.2d 414, 418 n.3 (2d
Cir. 1983) (citation omitted).

> vacancy exists for [her], or whether [she] would be hired if [she] applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. § 404.1520. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). Under the five-step sequential evaluation process, the decision-maker determines:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

The plaintiff-claimant bears the burden of proof regarding the first four steps. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (quoting *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996)). If the plaintiff-claimant meets his or her burden of proof, the burden shifts to the defendant-Commissioner at the fifth step to prove the plaintiff-claimant is capable of working. *Id.*

**B.      Scope of Review**

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Featherly v. Astrue*, 793 F. Supp. 2d 627, 630 (W.D.N.Y. 2011) (citations omitted).  A reviewing court may not affirm the ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987).

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision.  42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991).  An ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision.  *Roat v. Barnhart*, 717 F. Supp. 2d 241, 248 (N.D.N.Y. 2010); *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).  "Substantial evidence" is evidence amounting to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation marks and citation omitted).  Where evidence is deemed susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld.  *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's findings must be sustained "even where substantial

evidence may support the plaintiff's positions and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  A reviewing court cannot substitute its interpretation of the administrative record in place of the Commissioner's if the record contains substantial support for the ALJ's decision. *Rutherford*, 685 F.2d at 62 (2d Cir. 1982).

## C.    Standards for ALJ Evaluation of Opinion Evidence

The regulations regarding the evaluation of medical evidence have been amended for claims filed after March 27, 2017,[3] and several of the prior Social Security Rulings, including SSR 96-2p, have been rescinded.  According to the new regulations, the Commissioner "will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion." *Revisions to Rules Regarding the Evaluation of Medical Evidence* ("*Revisions to Rules*"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867–68 (Jan. 18, 2017);  *see* 20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Instead, the Commissioner must consider all medical opinions and "evaluate their persuasiveness" based on the following five factors: supportability; consistency; relationship with the claimant; specialization; and "other factors." 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c).

Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." *Id.* at §§ 404.1520c(a) and (b)(1), 416.920c(a) and (b)(1).  The two "most important factors for determining the persuasiveness of medical opinions

---

[3]  Plaintiff's applications were filed November 19, 2018.  (T. 249-265.)  Thus, the new regulations apply in her case.

6

are consistency and supportability," which are the "same factors" forming the foundation of the treating source rule.  *Revisions to Rules*, 82 Fed. Reg. 5844-01 at 5853.

An ALJ is specifically required to "explain how [he or she] considered the supportability and consistency factors" for a medical opinion.  20 C.F.R. §§ 404.1520c (b)(2), 416.920c(b)(2). With respect to "supportability," the new regulations provide "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."  *Id.* at §§ 404.1520c(c)(1), 416.920c(c)(1).  The regulations provide with respect to "consistency," "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* at §§ 404.1520c(c)(2), 416.920c(c)(2).

Under the new regulations an ALJ must consider, but need not explicitly discuss, the three remaining factors in determining the persuasiveness of a medical source's opinion.  *Id.* at §§ 404.1520c(b)(2), 416.920c(b)(2).  However, where the ALJ has found two or more medical opinions to be equally well supported and consistent with the record, but not exactly the same, the ALJ must articulate how he or she considered those factors contained in paragraphs (c)(3) through (c)(5).  *Id.* at §§ 404.1520c(b)(3), 416.920c(b)(3).

### D.   Standards for ALJ Evaluation of Symptoms

In evaluating a plaintiff's RFC for work in the national economy, the ALJ must take the plaintiff's reports of pain and other symptoms into account.  *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010).  The ALJ must carefully consider "all the evidence presented by claimants regarding their symptoms, which fall into seven relevant factors including 'daily activities' and

the 'location, duration, frequency, and intensity of [their] pain or other symptoms.'" *Del Carmen Fernandez v. Berryhill*, No. 18-CV-326, 2019 WL 667743, at \*9 (S.D.N.Y. Feb. 19, 2019) (citing 20 C.F.R. § 404.1529(c)(3); SSR 16-3p, *Titles II and XVI: Evaluation of Symptoms in Disability Claims*, 81 FR 14166-01 at 14169-70, 2016 WL 1020935 (Mar. 16, 2016)).

In 2016 the Commissioner eliminated the use of the term "credibility" from the "sub-regulatory policy" because the regulations themselves do not use the term.  SSR 16-3p, 81 FR at 14167.  Instead, symptom evaluation tracks the language of the regulations.[4]  The evaluation of symptoms involves a two-step process.  First, the ALJ must determine, based upon the objective medical evidence, whether the medical impairments "could reasonably be expected to produce the pain or other symptoms alleged . . . ."  20 C.F.R. §§ 404.1529(a), (b); 416.929(a), (b).

If so, at the second step, the ALJ must consider "'the extent to which [the claimant's] alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the [objective medical evidence] and other evidence to decide how [the claimant's] symptoms affect [her] ability to work.'"  *Barry v. Colvin*, 606 F. App'x 621, 623 (2d Cir. 2015) (citing *inter alia* 20 C.F.R. § 404.1529(a); *Genier*, 606 F.3d at 49) (alterations in original).[5]

If the objective medical evidence does not substantiate the claimant's symptoms, the ALJ must consider the other evidence.  *Cichocki v. Astrue*, 534 F. App'x 71, 76 (2d Cir. 2013) (citing

---

[4]  The standard for evaluating subjective symptoms has not changed in the regulations. Rather, the term "credibility" is no longer used, and SSR 16-3p makes it clear the evaluation of the claimant's symptoms is not "an evaluation of the claimant's character." SSR 16-3p, 81 FR at 14167.  The Court will remain consistent with the terms as used by the Commissioner.

[5]  The court in *Barry* also cited SSR 96–7p, 1996 WL 374186, at \*2 (July 2, 1996) which was superseded by SSR 16-3p.  As stated above, the factors considered are the same under both rulings.  The 2016 ruling has removed the emphasis on "credibility."

superseded SSR 96-7p).  The ALJ must assess the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms;  (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms;  (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms.  20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

The ALJ must provide specific reasons for the determination.  *Cichocki*, 534 F. App'x at 76.  However, the failure to specifically reference a particular relevant factor does not undermine the ALJ's assessment as long as there is substantial evidence supporting the determination.  *Id.* *See also Del Carmen Fernandez*, 2019 WL 667743 at *11 (citing *Rousey v. Comm'r of Soc. Sec.*, 285 F. Supp. 3d 723, 744 (S.D.N.Y. 2018)).  "[R]emand is not required where 'the evidence of record allows the court to glean the rationale of an ALJ's decision.'"  *Cichocki*, 534 F. App'x at 76 (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983)).

## III.    THE ALJ'S DECISION

In his September 28, 2020, decision, the ALJ applied the five-step sequential evaluation promulgated by the Commissioner for adjudicating disability claims.  (T. 8-30.)  First, he found Plaintiff met the insured status requirements of the Social Security Act through December 31, 2017, and had not engaged in substantial gainful activity since the alleged onset date of December 1, 2016.  (T. 13.)  The ALJ next determined Plaintiff has the following severe impairments: "degenerative disc disease of the cervical spine, degenerative disc disease of the

lumbar spine, de Quervain's tenosynovitis[6] bilaterally, a history of bilateral carpal tunnel syndrome, bipolar disorder, schizoaffective disorder, posttraumatic stress disorder, and a history of substance use disorders."  (T. 13-14.)  He then determined Plaintiff does not have an impairment or combination of impairments meeting or medically equaling one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1.  (T. 14-16.)

The ALJ next found Plaintiff has the residual functional capacity ("RFC") to perform less than the full range of light work.  (T. 16-21.)  Specifically, the ALJ found plaintiff

> must be allowed to alternate at will between sitting and standing, can understand, remember, and carry out only simple and routine tasks, can concentrate, persist, and maintain pace in a work setting to the extent necessary to perform only simple and routine tasks, can interact no more than occasionally with supervisors, co-workers, or the public, and can appropriately deal with ordinary changes in an unskilled occupation that involves only simple and routine tasks.

(T. 16.)  Relying on VE testimony, he found Plaintiff is unable to perform her past relevant work.  (T. 21.)  Based upon the RFC, the Medical-Vocational Guidelines, and the VE testimony, the ALJ determined Plaintiff was capable of performing other jobs existing in significant numbers in the national economy.  (T. 21-22.)  Thus, the ALJ determined Plaintiff has not been under a disability, as defined in the Social Security Act, from December 1, 2016 through the date of the ALJ's decision.  (T. 22.)

## IV.   THE PARTIES' CONTENTIONS

Plaintiff was represented by an attorney during the administrative process but is appearing in this judicial proceeding pro se.  (Dkt. No. 10.)  She filed a letter brief asserting her

---

[6] De Quervain's tenosynovitis is a condition affecting the tendons on the thumb side of the wrist. It can cause pain and swelling at the base of the thumb and makes it difficult to turn the wrist, grasp with the fingers, or make a fist.  *See* https://www.mayoclinic.org/diseases-conditions/de-quervain-tenosynovitis/symptoms-causes/syc-20371332 (last visited 9/9/2022).

physical and mental impairments prevent her from working. (Dkt. No. 14.)  In response, the Commissioner contends the ALJ's decision denying disability benefits applies the correct legal standards and is supported by substantial evidence.  (Dkt. No. 17 at 12-20.)

## V.   THE COURT'S ANALYSIS

In her letter brief, Plaintiff contends she should be considered disabled in light of her diagnosed paranoid schizophrenia and her physical impairments but does not address the central question in this proceeding -- whether or not the ALJ's determination is supported by substantial evidence.  "In a case such as this, where Plaintiff is proceeding pro se, General Order No. 18's promise of a consideration of the merits complies with the special solicitude that the Second Circuit mandates for pro se litigants." *Hubbard v. Comm'r of Soc. Sec.*, No. 6:14-CV-1401 (GTS/WBC), 2016 WL 551783, at *4 (N.D.N.Y. Jan. 14, 2016).  As such, this court will "examine[ ] the record to determine whether the ALJ applied the correct legal standard and reached a decision based on substantial evidence." *Id.* (citing *Gregorka v. Comm'r of Soc. Sec.*, No. 6:13-CV-1408 (GTS/TWD), 2015 WL 3915959, at *4 (N.D.N.Y. June 25, 2015)).  As set out below, such examination will address both the ALJ's sequential evaluation and the Appeals Council's denial of review.

### A.   Substantial Evidence Supports the Commissioner's Step Two Determination Regarding Plaintiff's Severe Impairments.

#### 1.   Legal Standard

A severe impairment significantly limits the plaintiff's physical and/or mental ability to do basic work activities.  *See* 20 C.F.R. §§ 404.1520(c), 416.920(c); *see also* 20 C.F.R. §§ 404.1521(a), 416.921(a) (stating an impairment is not severe at step two if it does not significantly limit a claimant's ability to do basic work activities).  The Regulations define "basic

work activities" as the "abilities and aptitudes necessary to do most jobs," examples of which include, (1) physical functions such as walking, standing, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers and usual work situations; and (6) dealing with changes in a routine work setting.  20 C.F.R. §§ 404.1521(b), 416.921(b).  "Severity" is determined by the limitations imposed by an impairment, and not merely by its diagnosis.  The mere presence or diagnosis of a disease or impairment is not, by itself, sufficient to deem a condition severe. *Monique Danielle W. v. Comm'r of Soc. Sec.*, No. 5:18-CV-184 (DNH), 2019 WL 2358529, at *4 (N.D.N.Y. June 4, 2019) (quoting *Zenzel v. Astrue*, 993 F. Supp. 2d 146, 152 (N.D.N.Y. 2012)). The claimant bears the burden of presenting evidence establishing severity at step two of the disability analysis.  *Rhondalee T. v. Berryhill*, No. 3:17-CV-1241 (CFH), 2019 WL 1100267, at *5 (N.D.N.Y. Mar. 8, 2019) (citing *Taylor v. Astrue*, 32 F. Supp. 3d 253, 265 (N.D.N.Y. 2012)).

An ALJ should make a finding of "'not severe' . . . if the medical evidence establishes only a 'slight abnormality' which would have 'no more than a minimal effect on an individual's ability to work.'"  *Mark K. v. Comm'r of Soc. Sec. Admin.*, No. 5:18-CV-627 (GLS), 2019 WL 4757381, at *1 (N.D.N.Y. Sept. 30, 2019) (quoting *Rosario v. Apfel*, No. 97 CV 5759, 1999 WL 294727, at *5 (E.D.N.Y. Mar. 19, 1999)).  Although an impairment may not be severe by itself, the ALJ must also consider "the possibility of several such impairments combining to produce a severe impairment . . . ."  Social Security Ruling ("SSR") 85-28, 1985 WL 56856, at *3 (1985). However, a combination of "slight abnormalities," having no more a minimal effect on plaintiff's ability to work, will not be considered severe.  *Id*.  The ALJ must assess the impact of

12

the combination of impairments, rather than assessing the contribution of each impairment to the restriction of activity separately, as if each impairment existed alone. *Id*.

The step two analysis "may do no more than screen out *de minimis* claims." *Vogt on behalf of Vogt v. Comm'r of Soc. Sec.*, No. 18-CV-231, 2019 WL 4415277, at \*4 (W.D.N.Y. Sept. 16, 2019) (quoting *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995)). If the disability claim rises above a *de minimis* level, then the ALJ must undertake the remaining analysis of the claim at step three through step five. *Dixon*, 54 F.3d at 1030.

Often, when there are multiple impairments, and the ALJ finds some, but not all of them severe, an error in the severity analysis at step two may be harmless because the ALJ continued with the sequential analysis and did not deny the claim based on the lack of a severe impairment alone. *Tryon v. Astrue*, No. 5:10-CV-537 (MAD), 2012 WL 398952, at \*3 (N.D.N.Y. Feb. 7, 2012) (citing *Kemp v. Comm'r of Soc. Sec.*, No. 7:10-CV-1244 (GLS/ATB), 2011 WL 3876526, at \*8 (N.D.N.Y. Aug. 11, 2011)). This is particularly true because the regulations provide the combined effects of all impairments must be considered, regardless of whether any impairment, if considered separately, would be of sufficient severity. 20 C.F.R. §§ 404.1523, 416.923; *Dixon*, 54 F.3d at 1031.

### 2.    Application

Here, the ALJ found Plaintiff's degenerative disc disease of the cervical spine, degenerative disc disease of the lumbar spine, de Quervain's tenosynovitis bilaterally, a history of bilateral carpal tunnel syndrome, bipolar syndrome, schizoaffective disorder, posttraumatic stress disorder, and a history of substance use disorders to be severe impairments. (T. 13-14.) The ALJ also considered plaintiff's history of obesity and her testimony describing daily headaches but found the longitudinal medical record did not show any resulting work-related

functional limitations for those conditions lasting for a twelve-month period.  (T. 14.)

Accordingly, the ALJ's analysis at step two provides sufficient explanation indicating adequate

consideration of the evidence related to Plaintiff's alleged impairments, including those he did

not find to be severe. (T. 14-15.)  *See Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir,

2013); *Fuimo v. Colvin*, 948 F. Supp. 2d 260, 269-70 (N.D.N.Y. 2013).  Therefore, for the

reasons above, the ALJ's findings regarding Plaintiff's impairments at Step Two are supported

by substantial evidence, and remand is not required on this basis.

### B.  Substantial Evidence Supports the Commissioner's Step Three Determination Regarding Listed Impairments.

#### 1.  Legal Standards

Plaintiff has the burden of proof at step three to show her impairments meet or medically

equal a Listing.  *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 272 (N.D.N.Y. 2009) (citing *Naegele*

*v. Barnhart*, 433 F. Supp. 2d 319, 324 (W.D.N.Y. 2006)).  "To meet a Listing, Plaintiff must

show that her medically determinable impairment satisfies all of the specified criteria in a

Listing."  *Rockwood*, 614 F. Supp. 2d at 272 (citing 20 C.F.R. § 404.1525(d)).  "If a claimant's

impairment 'manifests only some of those criteria, no matter how severely,' such impairment

does not qualify."  *Id.*, 614 F. Supp. 2d at 272 (quoting *Sullivan v. Zebley*, 493 U.S. 521, 530

(1990).  Additionally, even where there is no express rationale for finding an impairment does

not meet a Listing, a court may uphold the ALJ's decision if the determination is supported by

substantial evidence.  *Id.*, 614 F. Supp. 2d at 273 (citing *Berry,* 675 F.2d at 468).

#### 2.  Application

Here, the ALJ found Plaintiff did not have an impairment or combination of

impairments meeting or medically equaling the severity of a listed impairment, considering in

particular Listing 1.02 (joint disfunction), Listing 1.04 (spinal disorders), Listing 12.03

(schizophrenia spectrum and other psychotic disorders), Listing 12.04 (depressive, bipolar, and

related disorders), and 12.15 (trauma and stressor-related disorders).  (T. 14-16.)

As part of his step three analysis, the ALJ reviewed the criteria for each of the relevant

Listings and then compared each Listing to the symptoms described in Plaintiff's treatment

history and testimony.  For example, the ALJ noted Listing 1.02 requires an inability to perform

fine and gross movements effectively, and examination results showed Plaintiff had full range of

motion in her upper extremities, full strength in her upper extremities, and her hand and finger

dexterity and strength were intact.  (T. 14, 1036, 1054.)  Likewise, Listing 1.04 requires

consistent findings of motor loss, sensory and reflex loss, and positive straight leg raising tests,

none of which were present in Plaintiff's medical records. (T. 15, 713-718, 1036-1037.)  Finally,

the ALJ considered the various mental health listings but found Plaintiff's treatment records and

the available medical opinions did not establish more than moderate limitations in any functional

area.  (T. 15-16, 856-857, 1113-1114.)  Accordingly, the ALJ's thorough analysis and

explanation of Plaintiff's impairments at Step Three indicate sufficient consideration of her

impairments in relation to the Listings, and his findings are thus supported by substantial

evidence.  As such, remand is not required on this basis.

### C.   Substantial Evidence Supports the Commissioner's RFC Determination at Step Four.

#### 1.  Legal Standards

A claimant's RFC is the most he or she can do despite his or her limitations.  20 C.F.R. §

404.1545(a)(1).  "Ordinarily, RFC is the individual's maximum remaining ability to do sustained

work activities in an ordinary work setting on a regular and continuing basis.  A regular and

continuing basis means eight hours a day, for five days a week, or an equivalent work schedule."

*Pardee v. Astrue*, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (citing *Melville v. Apfel*, 198 F.3d

45 52 (2d Cir. 1999)).  "In making a residual functional capacity determination, the ALJ must

consider a claimant's physical abilities, mental abilities, symptomology, including pain and other

limitations which could interfere with work activities on a regular and continuing basis."  *Id.*

(citing 20 C.F.R. § 404.1545(a)).  "Ultimately, '[a]ny impairment-related limitations created by

an individual's response to demands of work . . . must be reflected in the RFC assessment.'"

*Hendrickson v. Astrue*, No. 11-CV-0927 (ESH), 2012 WL 7784156, at *3 (N.D.N.Y. Dec. 11,

2012) (quoting SSR 85-15, 1985 WL 56857, at *8).  The RFC determination "must be set forth

with sufficient specificity to enable [the Court] to decide whether the determination is supported

by substantial evidence."  *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

### 2. The ALJ's RFC Determination Regarding Plaintiff's Physical Impairments is Supported by Substantial Evidence.

In calculating plaintiff's physical RFC, the ALJ considered a number of medical

opinions.  Of these, the ALJ found the November 14, 2019, opinion of Dr. Warren Wulff, a

treating orthopedic specialist, to be most persuasive.[7] (T. 20, 1054.)  Contemporaneous physical

examination notes signed by Dr. Wulff describe Plaintiff as demonstrating a normal gait, with

"mild" limitations in her cervical spine range of motion and "mild" tenderness on the left side.

(T. 1054.)  During the examination, Plaintiff showed full strength in her upper extremities. (*Id.*)

---

[7] This opinion is found in treatment notes authored by a physician's assistant but co-signed by Dr. Wulff.   When a doctor and a physician assistant sign the same reports, the opinion can be considered to be from the physician.  *Gandino v. Comm'r of Soc. Sec.*, No. 5:17-CV-42 (WBC), 2018 WL 1033287, at *7 (N.D.N.Y. February 22, 2018) (collecting cases).

Based upon this physical examination and recent cervical spine x-rays, Dr. Wulff opined, "At this point I do not feel that she has signs and her clinical exam [*sic*] that would force her out of work.  She may require restriction of changing position as needed.  No heavy lifting greater than 20 pounds." (*Id.*)  Plaintiff was offered a prescription for physical therapy but declined. (*Id.*)

The ALJ incorporated Dr. Wulff's opinion into the physical RFC determination, by limiting Plaintiff to light work with the option to alternate at will between sitting and standing. (T. 16.)  "Light work" is ordinarily defined as work requiring

> lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

By deeming Dr. Wulff's opinion to be the most persuasive, the ALJ adopted the most restrictive medical opinion of plaintiff's physical impairments in the record. (T. 20.)  In doing so, the ALJ discounted the opinions of consultative examiner Dr. Kalyani Ganesh and state agency medical consultants Dr. S. Putcha and Dr. T. Schmidt-DeYoung. (T. 20, 80-85, 141-142, 637-640.)

During Dr. Ganesh's October 18, 2019, consultative examination, Plaintiff had a normal gait and was able to walk on her heels and toes without difficulty. (T. 1036.)  Her cervical spine showed full flexion, extension, lateral flexion bilaterally, and full rotary movement bilaterally. (T. 1037.)  Her lumbar spine showed reduced flexion, extension, lateral flexion and rotary movement. (*Id.*)  She had full strength in her upper and lower extremities, and full grip strength

17

in both hands.  (*Id.*)  Based on this examination, Dr. Ganesh opined Plaintiff had no gross

physical limitations with regard to sitting, standing, walking, or using her upper extremities.  (T.

1038.)

Dr. Putcha and Dr. Schmidt-DeYoung reviewed Plaintiff's available medical records in

November 2019 and February 2020, respectively.  (T. 80-81, 122-123.)  Their review included

Dr. Ganesh's consultative examination reports, imaging reports of the cervical spine, and

treatment notes for Plaintiff's neck, back, and hand pain.  (T. 81.)  Based on these documents,

both physicians reached the same opinion of Plaintiff's physical limitations, finding Plaintiff can

occasionally lift or carry up to fifty pounds, and can frequently lift or carry up to twenty-five

pounds.  (T. 80, 122.)  They also opined Plaintiff can stand and/or walk for a total of about six

hours during the workday and is capable of sitting for a total up to six hours each workday as

well.  (*Id.*)  The ALJ concluded these limitations were consistent with an RFC of medium work,

and thus overstated Plaintiff's physical abilities when compared to the opinion of Dr. Wulff, a

specialist who had examined Plaintiff.  (T. 20.)

The ALJ did not base his RFC determination solely on the opinion evidence.  "[T]here is

no requirement that the ALJ pick one RFC [opinion] and use that particular evaluation in its

entirety."  *Alexandrea R.R. v. Berryhill*, No. 15-CV-756 (FPG), 2019 WL 2269854, at *6

(N.D.N.Y. May 28, 2019).  Rather, "it is the ALJ's responsibility to choose between properly

submitted medical opinions and other competent evidence to piece together an overall [RFC]

assessment."  *Id.*  In addition, an ALJ may consider relevant regular daily activities in his

evaluation of consultative opinion evidence.  *See George A. v. Comm'r of Soc. Sec.*, No. 20-CV-

691 (MJR), 2021 WL 2102527, at * (W.D.N.Y. May 25, 2021) (rejecting consultative opinion

18

describing moderate to marked limitations for repetitive twisting and bending of the cervical spine as inconsistent with plaintiff's report of regularly driving a car).

The ALJ met his obligations to review the full scope of record evidence by considering treatment records from Plaintiff's primary care physician and orthopedist along with Plaintiff's description of her daily activities.  (T. 20.)  Treatment records showed Plaintiff's neck, back, and wrist pain was largely controlled with topical creams, exercise, and occasional use of prescription pain medication.  (T. 580, 713-714, 717-718, 720, 1054-1055.)  The ALJ found physical examination notes from Plaintiff's treating physicians to be quite similar to the objective findings in Dr. Ganesh's 2019 consultative examination report and corresponded to the stable findings in the physician-reviewed imaging reports for Plaintiff's cervical and lumbar spine.  (T. 17, 1036-1037.)  During the period under review, Plaintiff declined physician suggestions for more extensive physical therapy for her back or pain injections in her wrist.  (T. 713, 717, 1054-1055.)  The ALJ also considered Plaintiff's statements to treating sources describing her impairments as not interfering with her daily activities.  (T. 17, 713, 717.)  According to Plaintiff's testimony, these activities included going for walks in good weather, driving, grocery shopping, and doing light cleaning around the house.  (T. 50-52.)  The ALJ also noted Plaintiff's occasional engagement in more strenuous activities, such as looking for a new apartment and attending a fair.  (T. 19, 1124.)

Taking all these factors into account, the ALJ found Plaintiff "has minimal limitations for standing, walking, lifting, carrying, and performing postural activities, and no significant limitations for reaching or using her hands for fine or gross motor activities."  (T. 18.)  It is the province of the ALJ to resolve genuine conflicts in the record.  *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002).  However, the Commissioner need not "reconcile explicitly every shred of

medical testimony." *Galiotti v. Astrue*, 266 F. App'x 66, 67 (2d Cir. 2008) (citing *Fiorello v. Heckler*, 725 F.2d 174, 176 (2d Cir. 1983)).  Here, the ALJ resolved conflicts between the objective medical record, medical opinion evidence, and hearing testimony related to Plaintiff's physical impairments by placing the greatest reliance on evidence he deemed most consistent with plaintiff's overall treatment record and activities.  In doing so, the ALJ appropriately evaluated the conflicting medical evidence and plaintiff's testimony and made an RFC finding consistent with the overall record.  *See Matta v. Astrue,* 508 F. App'x. 53, 56 (2d Cir. 2013) (although ALJ's conclusion did not perfectly correspond with any of the opinions of medical sources, ALJ was entitled to weigh all of the evidence available to make an RFC finding consistent with the record as a whole).  In light of the ALJ's analysis, this court concludes the RFC determination was supported by substantial evidence, as summarized above.  Therefore, this court will not disturb the ALJ's RFC determination of Plaintiff's physical impairments. *Vincent v. Shalala*, 830 F. Supp. 126, 133 (N.D.N.Y. 1993) ("[I]t is not the function of the reviewing court to reweigh the evidence.") (citing *Carroll v. Sec'y of Health and Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983)).

### 3.  The ALJ's RFC Determination Regarding Plaintiff's Mental Impairments is Supported by Substantial Evidence.

In evaluating potential limitations imposed by Plaintiff's mental impairments, the ALJ considered the opinions of consultative examiner Dr. Jeanne Shapiro, as well as state agency consultants Dr. M. Momot-Baker and Dr. C. Walker.  (T. 20, 81-83, 123-126.)  Although no mental health treating source opinion was available, the ALJ reviewed Plaintiff's treatment notes in detail, particularly those from past psychiatric hospitalizations.  (T. 18-21.)

During her October 18, 2019, consultative examination, Dr. Shapiro found Plaintiff to have a cooperative demeanor with an adequate manner of relating, social skills, and overall presentation.  (T. 1031.)  She demonstrated coherent and goal-directed thought processes with no evidence of delusions, hallucinations, or disordered thinking.  (*Id.*)  Her attention and concentration were intact, and she showed no memory deficits.  (T. 1031-1032.)  Based on her examination, Dr. Shapiro opined Plaintiff

> appears to have no limitations understanding, remembering, or applying simple directions and instructions.  She appears to have no limitations understanding, remembering or applying complex directions and instructions.  She appears to have no limitations using reasoning and judgment to make work-related decisions.  She appears to have mild limitations interacting adequately with supervisors, coworkers, and the public.  She appears to have no limitations sustaining concentration and performing a task at a consistent pace.  She appears to have no limitations  sustaining an ordinary routine and regular attendance at work.  She appears to have mild limitations regulating emotions, controlling behavior, and maintaining well-being.  She appears to have no limitations maintaining personal hygiene and wearing appropriate attire.  She appears to have no limitations being aware of normal hazards and taking appropriate precautions.

(T. 1032.)  In Dr. Shapiro's opinion, the examination results were consistent with psychiatric problems, but Plaintiff's symptoms did not appear to be significant enough to interfere with her ability to function on a daily basis.  (*Id.*)  The ALJ found Dr. Shapiro's overall conclusion of less than disabling mental health symptoms to be persuasive but found her opinion describing no more than "mild" limitations in any specific functional area to be "somewhat optimistic" in light of the overall record.  (T. 20, 1032.)

Dr. Momot-Baker and Dr. Walker had greater access to the overall record, and the ALJ found their opinions to be more persuasive, even though neither consultant examined Plaintiff.  (T. 20.)  Dr. Momot-Baker opined Plaintiff has "moderate" limitations in her ability to complete a normal workday and workweek without interruption from psychologically based symptoms

and her ability to respond appropriately to changes in the work setting.  (T. 83.)  In a narrative section described by the ALJ as "detailed," Dr. Momot-Baker cited examples from Plaintiff's 2019 psychiatric hospitalization, recent treatment notes, and Dr. Shapiro's consultative examination as support for the opinion Plaintiff "is able to understand and remember work procedures, maintain adequate attention and concentration to sustain a routine and complete work-like tasks, engage in basic interactions to meet work-related needs, and adapt to basic changes and make routine decisions"  (T. 83.)  Following Plaintiff's request for reconsideration, Dr. Walker reviewed more recent documentation describing Plaintiff's mental health symptoms as largely controlled with medication and agreed with Dr. Momot-Baker's opinion.  (T. 125.)

The courts have long recognized an ALJ has discretion to rely on a non-examining medical consultant's opinion.  *See Baszto v. Astrue*, 700 F.Supp.2d 242, 249 (N.D.N.Y. 2010) ("An ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability."); *Byrne v. Berryhill*, 284 F. Supp. 3d 250, 260 (E.D.N.Y. 2018) ("Non-examining medical consultants . . . may provide opinions, which constitute substantial evidence."); *see Leach v. Barnhart*, No. 02-CV-3561, 2004 WL 99935, at *9 (S.D.N.Y. Jan. 22, 2004) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims.  As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.").  Here, the ALJ relied upon the opinions from Dr. Momot-Baker and Dr. Walker only after evaluating their supportability and consistency with Plaintiff's psychiatric treatment record.

As part of his evaluation of these two opinions, the ALJ reviewed Plaintiff's history of mental health treatment dating back to at least 2012.  (T. 19-20, 125.)  Most relevant to

Plaintiff's claim, the ALJ reviewed records associated with Plaintiff's psychiatric hospitalization between January 2019 and April 2019. (T. 18, 735-737.) At the time of her admission, Plaintiff was in custody following an arrest for petit larceny when she began exhibiting extreme irritability, illogical thought processes, and paranoia. (T. 735.) She initially refused to take psychiatric medication and her prognosis was considered poor. (*Id.*) During her hospitalization, Plaintiff's symptoms came under control with counseling and medication. (T. 18, 735-737, 790.). Following her discharge from the hospital, Plaintiff remained compliant with both counseling and medication. As a result, her treatment providers and Plaintiff herself characterized her symptoms as still present but well-managed. (T. 18, 856-857, 866-867, 873, 887, 1086, 1108, 1114, 1325, 1343.) Beginning in November 2019, Plaintiff's treatment providers deemed her symptoms to be sufficiently controlled to allow Plaintiff to transition away from regular counseling sessions and toward monthly appointments for medication management only. (T. 19, 1113-1114.) The ALJ found the most recent treatment notes in the record reflected this scaled-back treatment approach, with no recognized deterioration in Plaintiff's mental health. (T. 1140, 1148, 1320-1321, 1325, 1330.)

As a general matter, moderate limitations are not an impediment to the ability to perform gainful activity, particularly when an RFC has already limited a claimant to unskilled, routine work. *See Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (where "[n]one of the clinicians who examined [Petitioner] indicated that she had anything more than moderate limitations in her work-related functioning," "the ALJ's determination Petitioner could perform her previous unskilled work was well supported"); *Melisa G. v. Berryhill*, No. 3:18-CV-508 (DJS), 2019 WL 2502726, at *5 (N.D.N.Y. June 17, 2019) (holding "moderate limitations are not prohibitive of performing unskilled work."). Thus, the ALJ identified substantial evidence to reasonably

23

conclude Plaintiff's mental impairments did not prevent her from working in unskilled positions consisting of simple and routine tasks and occasional social interaction. (T. 16.) Accordingly, the ALJ had substantial evidence to support his RFC determination related to Plaintiff's mental impairments, and there is no basis for remand with regard to the step four determination.

### C.   Substantial Evidence Supports the Commissioner's Step Five Determination Regarding Plaintiff's Ability to Perform Jobs Existing in Significant Numbers in the National Economy.

#### 1.   Legal Standards

At step five, the burden shifts to the Commissioner "to show there is other work that [the claimant] can perform." *McIntyre*, 758 F.3d at 150 (quoting *Brault v. Soc Sec. Admin, Comm'r*, 683 F.3d 443, 445 (2d Cir. 2012). "If a claimant has non-exertional limitations that 'significantly limit the range of work permitted by his exertional limitations,' the ALJ is required to consult with a vocational expert." *Zabala*, 595 F.3d at 410 (quoting *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986)).

If the ALJ utilizes a VE at the hearing, the VE is generally questioned using a hypothetical incorporating Plaintiff's limitations. *See Aubeuf v. Schweiker*, 649 F.2d 107, 114 (2d Cir. 1981). The ALJ may rely on a VE's testimony regarding the availability of work as long as the hypothetical facts the expert is asked to consider are based on substantial evidence and accurately reflect Plaintiff's limitations. *Calabrese v. Astrue*, 358 F. App'x 274, 276 (2d Cir. 2009). Where the hypothetical is based on an ALJ's RFC analysis which is supported by substantial facts, the hypothetical is proper. *Id.* at 276-77.

#### 2.   Application

VE Susan Gaudet's hearing testimony included a response to a hypothetical question based upon Plaintiff's RFC, where she identified three representative occupations a similarly

situated individual could perform.  (T. 58-61.)  Because this court has found the ALJ's RFC

determination was supported by substantial evidence, it also finds the ALJ's hypothetical to VE

Gaudet was proper, and his step five determination was supported by substantial evidence.

Therefore, there is no basis for remand with regard to the ALJ's step five determination.

   **D.    The Appeals Council Did Not Err by Declining to Review Dr. Humphrey's
           October 19, 2020, Opinion.**

      **1.   Legal Standards**

   At the final stage of the administrative process of adjudicating claims for benefits under

the Social Security Act, the regulations authorize a claimant to submit new and material evidence

to the Appeals Council when requesting review of an ALJ's decision.  20 C.F.R. §§ 404.970(b),

416.1470(b).  "If the new evidence relates to a period before the ALJ's decision, the Appeals

Council 'shall evaluate the entire record including the new and material evidence submitted ...

[and] then review the case if it finds that the administrative law judge's action, findings, or

conclusion is contrary to the weight of the evidence currently of record.'"  *Tammie S. v.

Berryhill*, No. 3:18-CV-174 (CFH), 2019 WL 859263, at *5 (N.D.N.Y. Feb. 22, 2019) (quoting

*Perez v. Chater*, 77 F.3d 41, 45 (2d Cir. 1996)).  "[I]f the Appeals Council denies review, the

ALJ's decision becomes the [Commissioner's] final decision."  *Id.*; *see also* §§ 404.981,

416.1481.

   "The role of the district court is to determine if the Appeals Council erred when it

determined that the new evidence was insufficient to trigger review of the ALJ's decision."

*Allborty v. Comm'r of Soc. Sec.*, No. 6:14-CV-1428 (DNH/ATB), 2016 WL 770261, at *8

(N.D.N.Y. Jan. 28, 2016), *report and recommendation adopted*, 2016 WL 796071 (N.D.N.Y.

Feb. 22, 2016) (citation omitted).  As such, "the issue before the Court is whether the new

evidence altered the weight of the evidence before the ALJ so dramatically as to require the

[Appeals Council] to take the case." *Canady v. Comm'r of Soc. Sec.*, No. 1:17-CV-0367

(GTS/WBC), 2017 WL 5496071, at *11 (N.D.N.Y. Oct. 4, 2017), *report and recommendation*

*adopted*, 2017 WL 5484663 (N.D.N.Y. Nov. 14, 2017).

### 2.  Application

As noted previously, Plaintiff was represented by counsel during the administrative

process.  (T. 35-36.)  On October 29, 2020, Plaintiff's then-counsel submitted new evidence to

the Appeals Council in the form of an October 19, 2020, opinion from Plaintiff's long-time

primary care physician, Dr. Lynn Humphrey.  (T. 35-39.)  Dr. Humphrey's treatment notes were

already part of the administrative record reviewed by the ALJ, but she had not provided a formal

opinion.  (T. 555-591, 998-1013, 1152-1153.)

Utilizing a check-box form with minimal narrative, Dr. Humphrey identified herself as

Plaintiff's treating physician for the past ten years and gave Plaintiff a "fair" prognosis for her

diagnosed cervical disc herniation with radiculopathy.  (T. 37.)  She further opined Plaintiff's

physical pain was negatively impacted by her diagnosed depression, anxiety, and bipolar

schizophrenia.  (*Id.*)  She also described medication side effects causing Plaintiff to experience

dizziness, tremors, and insomnia.  (*Id.*)

Dr. Humphrey opined Plaintiff's pain and other symptoms were severe enough to

interfere with her attention and concentration over thirty percent of the workday, impacting her

ability to perform even simple work tasks.  (*Id.*)  She opined Plaintiff could walk 1.5 city blocks

without rest or severe pain, could sit for no longer than thirty minutes at one time before needing

to change positions, and could stand for no longer than fifteen minutes at one time.  (T. 37-38.)

Dr. Humphrey estimated the total amount of time Plaintiff could sit during the workday was less

than two hours and imposed the same limitation on Plaintiff's ability to stand or walk.  (T. 38.)

She further opined Plaintiff would need frequent breaks to walk around during the workday and

would need a job allowing shifting positions at will from sitting, standing, or walking.  (*Id.*)  In

Dr. Humphrey's opinion, Plaintiff could rarely lift items weighing less than ten pounds and could

never lift greater weights.  (T. 38-39.)  She also estimated Plaintiff could use her upper

extremities for reaching, grasping, and fine or gross manipulation only ten percent of the

workday.  (T. 39.)  Based on these limitations, Dr. Humphrey opined Plaintiff was not capable of

full-time work and further opined such limitations had been in place since 2006.  (T. 39.)

A growing number of district courts in the Second Circuit have found the Appeals

Council is not required to explain its reasoning for denying review of the ALJ's decision, where

the Appeals Council did not issue a determination or decision based on the merits of plaintiff's

claim.  *See Lisa C. v. Kijakazi*, No. 3:21-CV-0037 (ATB), 2022 WL 2105853, at *11 (N.D.N.Y.

June 10, 2022) (collecting cases).  Here, the Appeals Council provided a limited explanation for

its denial of review, noting Dr. Humphrey's opinion was dated several weeks after the ALJ's

decision and finding the opinion "does not relate to the period at issue."  (T. 2.)  Without

deciding whether such explanation was required, this court finds the Appeals Council's

explanation, although brief, does not create grounds for remand.

A medical opinion cannot be deemed irrelevant merely because it is dated after the

disability determination.  *Newbury v. Astrue*, 321 F. App'x 16, 18 n. 2 (2d Cir. 2009) (summary

order) (citing *Pollard v. Halter*, 377 F.3d 183, 193 (2d Cir. 2004)).  However, this Court finds

the Appeals Council could reasonably find the unsupported and inconsistent timeline set out in

Dr. Humphrey's opinion to be irrelevant to the ALJ's disability determination.  *See David S. v.

Comm'r of Soc. Sec.*, No. 3:20-CV-1392 (DJS), 2022 WL 2869602, at *9 (N.D.N.Y. July 21,

2022) (finding Appeals Council had substantial evidence to conclude new treating source opinion did not apply to period relevant to ALJ's application where timeline actually covered by opinion was unclear).  In her opinion, Dr. Humphrey states the extreme physical and mental limitations described in her opinion date back to 2006.  (T. 39.)  The basis for this conclusion is unclear, as Dr. Humphrey stated she had no treatment relationship with Plaintiff until 2010.  (T. 37.)  This timeline also contradicts Plaintiff's medical history and testimony.  Although Plaintiff developed hand and wrist pain in 2006, she continued to work full-time until suffering neck and back injuries in a car accident in 2012.  (T. 46, 273-274.)  Therefore, the Appeals Council had substantial evidence to conclude this new but inconsistent opinion evidence was not relevant to the period under review by the ALJ.

Moreover, this court cannot conclude the new information in Dr. Humphrey's opinion creates "a reasonable possibility" the Commissioner would be prompted to decide Plaintiff's disability claim differently.  *See Guerra v. Saul*, 778 F. App'x 75, 77-78 (2d Cir. 2019) ("The concept of materiality requires ... a reasonable possibility that the new evidence would have influenced the [Commissioner] to decide claimant's application differently.").  Although the October 29, 2020, opinion is new, the ALJ already had the benefit of Dr. Humphrey's treatment notes and cited them in his RFC determination with regard to Plaintiff's ability to sit, stand, walk and other exertional and postural limitations.  (T.18.)  Dr. Humphrey's opinion does not explain any clinical basis for her opinion or explain the opinion's inconsistency with contemporaneous treatment notes and Plaintiff's own description of her daily activities.

In contrast, the ALJ's decision marshalled objective medical evidence, treatment notes, and testimony reflecting improved or controlled physical and mental symptoms and associated limitations, and a lack of medication side effects before determining Plaintiff could perform less

than the full range of light work. (T. 16-21, 35-37, 50-52, 551, 555-556, 713, 717, 1152, 1325.)

Therefore, the new evidence submitted to the Appeals Council does not present grounds for

remand. *Colgan v. Kijakazi*, 22 F.4th 353, 361 (2d Cir. 2022) ("the nature of an ALJ's inquiry in

disability factfinding turns on the substance of the medical opinion . . . and ultimately whether

there is reasonable evidence in the record that supports the conclusions drawn by the medical

expert."); *Rutkowski v. Astrue*, 368 Fed. App'x. 226, 229 (2d Cir. 2010) (evidence submitted to

the Appeals Council did not "add so much as to make the ALJ's decision contrary to the weight

of the evidence.").

**WHEREFORE**, it is hereby

**RECOMMENDED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 14)

be **DENIED**; and it is further

**RECOMMENDED** that Defendant's motion for judgment on the pleadings (Dkt. No.

17) be **GRANTED**; and it is further

**RECOMMENDED** that the ALJ's decision denying Plaintiff disability benefits be

**AFFIRMED**; and it is further

**ORDERED** that the Clerk of the Court serve copies of this Report-Recommendation on

the parties in accordance with the Local Rules, along with copies of the unpublished decisions

cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written

objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.

**FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL**

**PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing

*Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1);

Fed. R. Civ. P. 72.

**IT IS SO ORDERED.**

Dated: September 13, 2022
      Syracuse, New York

Therese Wiley Dancks
United States Magistrate Judge